Raymond George, :
              Petitioner :
               :
          v. :
               :
City of Philadelphia (Workers' :
Compensation Appeal Board), : No. 23 C.D. 2022
              Respondent : Submitted: July 15, 2022

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                 FILED:  October 11, 2022

        Raymond George (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) December 15, 2021 order affirming the WC Judge's (WCJ) decision that granted Claimant's Petition to Reinstate WC Benefits (Reinstatement Petition) as of May 14, 2019, and granted the City of Philadelphia's (Employer) Petition to Modify WC Benefits (Modification Petition) as of September 17, 2019. Claimant presents two issues for this Court's review:[1] (1) whether the Board erred by affirming the WCJ's decision reinstating his temporary total disability (TTD) benefits effective May 14, 2019, instead of January 5, 2012; and (2) whether the Board erred by upholding the WCJ's decision granting

---

[1] Claimant presents his issues in terms of whether *the Board* erred without reference to the WCJ's decision. However, this Court's "review is limited to determining whether *the WCJ's* findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169, 1172 n.3 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021). Therefore, the issues have been restated in terms of whether the Board erred by affirming the WCJ's decision.

the Modification Petition when Act 111[2] is unconstitutional.  After review, this Court affirms.

## Background

On December 28, 1999, Claimant sustained injuries while in the course and scope of his employment as a police officer for Employer, for which he received TTD.  On January 5, 2012, Claimant underwent an Impairment Rating Evaluation (IRE) during which the doctor determined that Claimant had an 8% whole-body impairment.  *See* Reproduced Record (R.R.) at 127a.  Based upon the parties' agreement memorialized in a March 22, 2012 WCJ decision, Claimant's status was modified to temporary partial disability (TPD) effective January 5, 2012.[3]

On June 20, 2017, the Pennsylvania Supreme Court decided *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*), wherein it declared that Section 306(a.2) of the WC Act (Act)[4] delegated its lawmaking authority to the American Medical Association (AMA) in violation of article II, section 1 of the Pennsylvania Constitution,[5] and struck the provision from the Act in its entirety.

---

[2] Act of October 24, 2018, P.L. 714, No. 111.  Act 111 repealed an unconstitutional Impairment Rating Evaluation (IRE) provision and replaced it with a new IRE provision, Section 306(a.3) of the WC Act, Act of June 2, 1915, P.L. 736, *as amended*, added by Section 1 of Act 111, 77 P.S. § 511.3, that was virtually identical and effective immediately.

[3] On February 25, 2013, a WCJ modified Claimant's WC benefits to reflect Employer's credit for Claimant's pension in conjunction with a Notice of Benefit Offset.  As a result, Claimant's WC benefits were modified to $155.95 a week from his prior $588.00 compensation rate, reflecting a $432.05 credit.

[4] Section 306(a.2) of the Act, added by the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, was repealed by Act 111, and replaced by Section 306(a.3) of the Act.

[5] Article II, section 1 of the Pennsylvania Constitution specifies: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."  Pa. Const. art. II, § 1.

Based upon *Protz II*, on May 14, 2019, before 500 weeks of Claimant's TPD expired, Claimant filed the Reinstatement Petition to have his TTD reinstated effective January 5, 2012. On September 17, 2019, Claimant underwent an IRE performed by Arnold Berman, M.D. (Dr. Berman), during which Dr. Berman determined that Claimant had a 6% whole-body impairment. *See* R.R. at 121a-131a. On November 15, 2019, Employer filed the Modification Petition, claiming that Claimant's disability status should again be changed to TPD effective September 17, 2019.[6]

The WCJ conducted hearings on June 15, August 19, and December 20, 2019, and August 14, 2020. On April 26, 2021, the WCJ granted the Reinstatement Petition effective as of the May 14, 2019 Reinstatement Petition filing date, and granted the Modification Petition effective as of the September 17, 2019 IRE date, with a credit against the 500-week partial disability cap for the weeks Employer paid Claimant TPD. Claimant appealed from the portions of the WCJ's decision granting the Reinstatement and Modifications Petitions to the Board. On December 15, 2021, the Board affirmed the WCJ's decisions. Claimant appealed to this Court.[7]

**Discussion**

Initially, after the *Protz II* Court struck Section 306(a.2) from the Act, the General Assembly enacted Act 111, effective October 24, 2018. Act 111

---

[6] On July 26, 2019, Employer filed a Petition to Terminate WC Benefits (Termination Petition), alleging that Claimant had fully recovered from his work injury as of July 8, 2019, when Claimant underwent an independent medical examination. The WCJ denied the Termination Petition. That denial is not at issue in this appeal.

[7] *See supra* note 1. Moreover, "[a]s with any challenge to the constitutionality of a statutory amendment, our scope of review is plenary and our standard of review is *de novo*." *Konidaris v. Portnoff Law Assoc., Ltd.*, 953 A.2d 1231, 1239 (Pa. 2008).

3

replaced former Section 306(a.2) of the Act with Section 306(a.3) of the Act, which declares, in pertinent part:

> (1) **When an employe has received total disability compensation** . . . **for a period of** [**104**] **weeks**, unless otherwise agreed to, **the employe shall be required to submit to a medical examination which shall be requested by the insurer within** [**60**] **days upon the expiration of the** [**104**] **weeks to determine the degree of impairment due to the compensable injury**, **if any**. The degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the [AMA] "Guides to the Evaluation of Permanent Impairment [(AMA Guides)]," 6th edition (second printing April 2009).
>
> (2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA Guides,] 6th edition (second printing April 2009), the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits . . . . **If such determination results in an impairment rating less than** [**35%**] **impairment under the** [**AMA Guides**,] **6th edition** (**second printing April 2009**), **the employe shall then receive partial disability benefits** . . . : Provided, however, That no reduction shall be made until [60] days' notice of modification is given.
>
> (3) Unless otherwise adjudicated or agreed to based upon a determination of earning power . . . , the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the [500]-week period of partial disability, show that the employe's earning power has changed.
>
> (4) An employe may appeal the change to partial disability at any time during the [500]-week period of partial disability[:[8]] Provided, That there is a determination that the employe meets the threshold impairment rating that is

[8] Section 306(b) of the Act limits a claimant's recovery of partial disability benefits to 500 weeks. *See* 77 P.S. § 512(1).

equal to or greater than [35%] impairment under the [AMA Guides,] 6th edition (second printing April 2009).

(5) Total disability shall continue until it is adjudicated or agreed . . . that total disability has ceased or the employe's condition improves to an impairment rating that is less than [35%] of the degree of impairment defined under the [AMA Guides,] 6th edition (second printing April 2009).

(6) Upon request of the insurer, the employe shall submit to an [IRE] in accordance with the provisions of [S]ection 314 [of the Act] to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than [2] [IREs] under this clause during a [12]-month period.

(7) In no event shall the total number of weeks of partial disability exceed [500] weeks for any injury or recurrence thereof, regardless of the changes in status in disability that may occur. In no event shall the total number of weeks of total disability exceed [104] weeks for any employe who does not meet a threshold impairment rating that is equal to or greater than [35%] impairment under the [AMA Guides,] 6th edition (second printing April 2009), for any injury or recurrence thereof.

77 P.S. § 511.3 (emphasis added).

Section 3 of Act 111 further provides, in relevant part:

(1) For the purposes of determining whether an employee shall submit to a medical examination to determine the degree of impairment and whether an employee has received total disability compensation for the period of 104 weeks under [S]ection 306(a.3)(1) of the [A]ct, **an insurer shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph**. This section shall not be construed to alter the requirements of [S]ection 306(a.3) of the [A]ct.

(2) For the purposes of determining the total number of weeks of partial disability compensation payable under [S]ection 306(a.3)(7) of the [A]ct, **an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph**.

5

Act 111, § 3(1), (2) (emphasis added).

Claimant first argues that the Board erred by affirming the WCJ's decision granting the Reinstatement Petition effective May 14, 2019 (the date he filed his Reinstatement Petition), rather than January 5, 2012 (the date of his constitutionally invalid IRE). Claimant specifically contends that the *Protz II* Court's rendering of Section 306(a.2) of the Act void *ab initio* invalidated the IRE process in its entirety, such that he should have been reinstated to TTD status effective the date of his January 5, 2012 IRE.

However, because Claimant did not challenge the validity of the January 5, 2012 IRE until after *Protz II* was decided, *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018) (*en banc*), and its progeny mandate that Claimant is not entitled to reinstatement of total disability benefits as of the IRE date but, rather, "**at the time []he filed [his] reinstatement petition**." *Whitfield*, 188 A.3d at 617 (emphasis added); *see also Rose Corp. v. Workers' Comp. Appeal Bd. (Espada)*, 238 A.3d 551, 564 (Pa. Cmwlth. 2020) ("[T]he Board's conclusion that [the c]laimant was entitled to reinstatement of total disability benefits as of the date [the c]laimant filed the [reinstatement p]etition is consistent with Act 111, the [] Act, and precedent."); *White v. Workers' Comp. Appeal Bd. (City of Phila.)*, 237 A.3d 1225, 1231 (Pa. Cmwlth. 2020), *appeal denied*, 244 A.3d 1230 (Pa. 2021) ("[The c]laimant's modification from total to partial disability was effective in 2013 and had not been appealed. Accordingly, [the c]laimant [] is entitled to reinstatement as of the date of h[is] reinstatement petition, not the effective date of the change in h[is] disability status from total to partial.").

In reaching its conclusion, the *Whitfield* Court observed that reinstatement petitions are governed by Section 413(a) of the Act, which states, in relevant part:

6

> A [WCJ] designated by the [Department of Labor and Industry (D]epartment[)] may, at any time, . . . **reinstate** . . . a notice of compensation payable, an original or supplemental agreement or an award of the [D]epartment or its [WCJ], upon petition filed by either party with the [D]epartment, **upon proof that the disability of an injured employe has increased** . . . **recurred** . . . . Such . . . reinstatement . . . shall be made as of the date upon which it is shown that the disability of the injured employe has increased . . . recurred . . . : Provided, [t]hat . . . no notice of compensation payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the [D]epartment **within three years after the date of the most recent payment of compensation** made prior to the filing of such petition.

77 P.S. § 772 (emphasis added); *see also Whitfield*, 188 A.3d at 612. The *Whitfield* Court reasoned:

> The approach set forth herein is consistent with the overall remedial purpose and humanitarian objective of the [] Act, which is intended to benefit the injured worker. *Griffiths v. Workers' Comp. Appeal Bd. (Seven Stars Farm, Inc.)*, . . . 943 A.2d 242, 255 ([Pa.] 2008). Otherwise, it would appear that a claimant whose status was changed to the 500-week, limited period of partial disability based upon an unconstitutional IRE would have no other mechanism of reinstating his or her right to total disability benefits. Furthermore, because a claimant either still receiving or recently receiving benefits may seek modification, so long as the petition is filed within three years of the date of the most recent payment of compensation, it does not upset an employer's expectation of finality. The [] Act clearly contemplates future modification as it provides a mechanism for claimants to seek such modification.

*Whitfield*, 188 A.3d at 616. The *Whitfield* Court declared: "Allowing [the c]laimant to seek modification under these circumstances does not prejudice employers or insurers by upsetting their expectation of finality because such determinations are

7

not yet truly 'final' until three years have passed since the date of last payment." *Id.* at 617.

In *City of Pittsburgh v. Workers' Compensation Appeal Board (Donovan)*, 252 A.3d 1189 (Pa. Cmwlth. 2021), this Court reaffirmed *Whitfield*, explaining:

> In *Weidenhammer* [*v. Workers' Compensation Appeal Board (Albright College)*, 232 A.3d 986 (Pa. Cmwlth. 2020)], decided just last year, this Court reaffirmed *Whitfield's* approach. . . . After discussing the principles governing the retroactive application of a new rule of law, as expounded by our Supreme Court in *Blackwell v. State Ethics Commission*, . . . 589 A.2d 1094 ([Pa.] 1991) . . . , this Court in *Weidenhammer* held that "**the ruling in *Protz II* was not intended to be given a fully retroactive effect**, **without regard to the statute of repose in** [S]ection 413(a) of the Act . . . ." *Weidenhammer*, 232 A.3d at 995. In light of *Whitfield* and [*Dana Holding Corp. v. Workers' Compensation Appeal Board (Smuck)*, 195 A.3d 635 (Pa. Cmwlth. 2018) (*en banc*) (]*Dana I*[), *aff'd*, 232 A.3d 629 (Pa. 2020) (*Dana II*)[9]], [this Court] summarized, "***Protz II* applies to cases in active litigation when the Supreme Court issued its decision *or where a reinstatement petition is filed within three years of the most recent compensation payment* in accordance with [S]ection 413(a) of the Act** . . . ." *Weidenhammer*, 232 A.3d at 991 (emphasis added). Because the claimant in *Weidenhammer* had not sought reinstatement of her total disability status within the three years provided by [S]ection 413(a) of the Act, and because her challenge was not preserved in active litigation at the time *Protz II* was decided, the claimant was not entitled to relief.

*City of Pittsburgh*, 252 A.3d at 1198 (bold emphasis added).

---

[9] In *Dana I*, this Court held that "*Protz II* applies to cases where the underlying IRE was actively being litigated when that decision was issued[.]" *Dana I*, 195 A.3d at 643. Our Supreme Court affirmed this Court's *Dana I* decision on June 16, 2020. *See Dana II*.

8

Here, in 2012, the parties agreed that Claimant's disability status would be modified from TTD to TPD effective as of his January 5, 2012 IRE date. Claimant was not actively litigating that IRE when the Supreme Court decided *Protz II*. Rather, post-*Protz II*, before his 500 weeks of TPD expired, Claimant sought to change his disability status by filing his Reinstatement Petition. Accordingly, *Whitfield* governs, and Claimant was entitled to have his TTD reinstated effective May 14, 2019 (the Reinstatement Petition filing date), rather than January 5, 2012 (the date of his original IRE).

Claimant further asserts that the *Protz II* Court's rendering of Section 306(a.2) of the Act void *ab initio* invalidated the IRE process in its entirety, such that he should have been reinstated to TTD status effective as of the date of his January 5, 2012 IRE. However, the *Weidenhammer* Court rejected that argument, declaring:

> Claimant may be correct that *Protz II* rendered former Section 306(a.2) of the Act . . . void *ab initio*, **but it does not follow that the Pennsylvania Supreme Court intended its ruling in *Protz II* to be given a fully retroactive effect** or to nullify the statute of repose in Section 413(a) of the Act.

*Id*. at 994 (emphasis added); *see also Ellison v. Se. Pa. Transp. Auth. (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 1080 C.D. 2020, filed Aug. 20, 2021), *appeal denied*, 268 A.3d 381 (Pa. 2021).[10] In fact, this Court recently observed it "ha[s] never held that any IRE preceding the *Protz* cases was automatically erased in its entirety . . . ."[11] *Harold v. Abate Irwin, Inc. (Workers' Comp. Appeal Bd.)* (Pa.

---

[10] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported decisions herein are cited for their persuasive value.

[11] Claimant contends that this Court's ruling in *Thompson v. Workers' Compensation Appeal Board (Exelon Corp.)*, 168 A.3d 408 (Pa. Cmwlth. 2017), mandates otherwise. We acknowledge that the *Thompson* Court's general statement that *Protz II* "essentially struck the

Cmwlth. No. 879 C.D. 2021, filed June 13, 2022), slip op. at 14. Therefore, Claimant's argument that the *Protz II* Court's rendering of Section 306(a.2) of the Act void *ab initio* invalidated the IRE process in its entirety, such that he should have been reinstated to TTD status effective as of the date of his January 5, 2012 IRE, lacks merit.

Claimant also contends that Act 111's retroactive application violates article I, section 11 of the Pennsylvania Constitution, known as the Remedies Clause,[12] by depriving him of his substantive, constitutionally-protected, vested right to receive ongoing TTD benefits.

The claimant in *Pierson v. Workers' Compensation Appeal Board (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021), similarly argued "that the General Assembly cannot take away his 'vested rights[.]'" *Id*. at 1180. Relying on *Whitfield*, the *Pierson* Court described that, although a WC claimant has a "certain right to benefits until such time as he is

---

entire IRE process from the Act[,]" *id*. at 412-13, which was interpreted to mean that "the Act no longer contain[ed] a provision allowing for modification of benefits based on an IRE." *Timcho v. Workers' Comp. Appeal Bd. (City of Phila.)*, 192 A.3d 1219, 1222 (Pa. Cmwlth. 2018). However, *Thompson* was one of the first cases this Court decided after the Supreme Court decided *Protz II*, *see Whitfield*; this Court later determined that *Thompson* was not necessarily dispositive of when and how disability benefits should be modified/restored in light of *Protz II*, *see Womack v. Workers' Comp. Appeal Bd. (Phila. Parking Auth.)* (Pa. Cmwlth. No. 14 C.D. 2018, filed Mar. 13, 2019); and, this Court did not have the benefit of its comprehensive *Dana I* or *Whitfield* analyses when it decided *Thompson*. Accordingly, *Thompson* is inapposite.

[12] Article I, section 11 of the Pennsylvania Constitution declares:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 11. "The Supreme Court stated that the purpose of the Remedies Clause is protection from legislative action and to ensure a vested right is not eliminated by subsequent legislation." *Dana Holding Corp. v. Workers' Comp. Appeal Bd. (Smuck)*, 195 A.3d 635, 644 (Pa. Cmwlth. 2018), *aff'd*, 232 A.3d 629 (Pa. 2020); *see also Konidaris*.

10

found to be ineligible for them[,]" Section 413(a) of the Act creates a "reasonable expectation[] under the Act that benefits may change." *Pierson*, 252 A.3d at 1179. The *Pierson* Court stated:

> [C]laimants, such as the one in the matter before us, did not automatically lose anything by the enactment of Act 111. Act 111 simply provided employers with the means to change a claimant's disability status from total to partial by providing the requisite medical evidence that the claimant has a whole body impairment of less than 35%, after receiving 104 weeks of TTD benefits.

*Id*.

> Following our decision in *Pierson*, this Court has consistently held that Act 111 does not abrogate or substantially impair a claimant's vested rights in [WC] benefits because there is no right to ongoing TTD status. *See, e.g.*, *Hutchinson v. Annville Twp. (Workers' Comp. Appeal Bd.)*, 260 A.3d 360, 367 (Pa. Cmwlth. 2021) (relying on *Pierson* to dismiss claimant's constitutional claims against Act 111).

*DiPaolo v. UPMC Magee Women's Hosp.*, 278 A.3d 430, 435 (Pa. Cmwlth. 2022); *see also Harold*. Moreover, because the purpose of the Remedies Clause is to ensure that "a vested right is not eliminated by subsequent legislation[,]" *Dana I*, 195 A.3d at 644; *see also Konidaris v. Portnoff Law Assocs., Ltd.*, 953 A.2d 1231 (Pa. 2008), where a claimant does not have a vested right in WC benefits, the Remedies Clause does not apply. *See Jaskulski v. Workers' Comp. Appeal Bd. (Weis Markets Inc.)* (Pa. Cmwlth. No. 797 C.D. 2021, filed Apr. 13, 2022); *see also Stoshick v. Air Prods. & Chems., Inc. (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 27 C.D. 2021, filed Feb. 3, 2022), *appeal denied*, (Pa. No. 90 MAL 2022, filed Aug. 8, 2022). Because this Court has previously ruled that a WC claimant does not have a vested right to ongoing TTD benefits that Act 111 violates, Claimant's argument to the contrary is unfounded.

11

Claimant further declares that *Protz II* must be applied retroactively regardless of whether its holding constituted a new rule of law. However,

> [this Court] previously explained:

>> A retroactive law has been defined as one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired. . . . **A law is given retroactive effect when it is used to impose new legal burdens on a past transaction or occurrence**.

>> *Dep't of Lab*[.] [&] *Indus., Bureau of Emp*[.] *Sec. v. Pa. Eng'g Corp.*, . . . 421 A.2d 521, 523 ([Pa. Cmwlth.] 1980) (emphasis added; internal citations omitted); *see also Passarello v. Grumbine*, . . . 87 A.3d 285, 307 ([Pa.] 2014) (requiring a decision to announce a new rule of law before it can be given retroactive effect); *Commonwealth v. Hughes*, . . . 865 A.2d 761, 780 ([Pa.] 2004) (explaining a court decision is considered "new" for purposes of retroactivity if it imposes a new obligation on the parties). Our decision [in *Whitfield*] does not impose any new legal consequences based upon a past transaction. Simply because *Protz II* is being applied to a case that arose from a work injury and a change in disability status that predates it does not mean it operates retroactively. *Warren v. Folk*, 886 A.2d 305, 308 (Pa. Super. 2005). It would be retroactive if it related back and gave a prior transaction a legal effect different from that which it had under the law in effect at the time. *Id.* This decision does not alter [the c]laimant's **past** status. Rather, it gives effect to the [c]laimant's status as it existed at the time she filed her reinstatement petition, which was filed within the statutory timeframe for filing such petitions.

*Whitfield*, 188 A.3d at 616-17 (footnote omitted; emphasis in original). Accordingly, Claimant's argument that *Protz II* must be applied retroactively regardless of whether its holding constituted a new rule of law lacks merit.

Because this Court has previously ruled that *Protz II* did not invalidate the entire IRE process, that Act 111's application does not violate a WC claimant's

12

vested right to ongoing TTD benefits, and that *Protz II* does not operate retroactively, *Whitfield* and its progeny govern this matter, and the Board properly upheld the WCJ's decision granting the Reinstatement Petition effective May 14, 2019 (the Reinstatement Petition filing date).

Claimant next argues that the Board erred by affirming the WCJ's decision granting the Modification Petition effective as of the September 17, 2019 IRE date, because Act 111, which purports to reinstitute the IRE procedure under the Act for injuries occurring prior to October 24, 2018, is unconstitutional and cannot be applied to workers injured before that date. However, in *Rose Corporation*, this Court explained:

> The plain language of Section 3 [of Act 111] establishes a mechanism by which employers/insurers may receive credit for weeks of compensation previously paid. First, Section 3(1) [of Act 111] provides that an employer/insurer 'shall be given credit for weeks of total disability compensation paid prior to the effective date of this paragraph' for purposes of determining whether the 104 weeks of total disability had been paid. This 104 weeks is important because, under both the former and current IRE provisions, a claimant need not attend an IRE until after the claimant receives 104 weeks of total compensation . . . . Therefore, pursuant to Section 3(1) [of Act 111], an employer/insurer will receive credit towards this 104 weeks for any weeks of total disability benefits that were previously paid prior to Act 111's enactment. Second, an employer/insurer will be given credit for any weeks of partial disability compensation paid prior to enactment of Act 111 "for the purposes of determining the total number of weeks of partial disability compensation payable under Section 306(a.3)(7) of the Act." In short, any week of partial disability previously paid will count towards the 500-week cap on such benefits.
>
> Accordingly, Section 3 of Act 111 does not evidence clear legislative intent that the entirety of Act 111 should be given retroactive effect. Instead, it appears the General Assembly intended that employers and insurers that relied

13

upon former Section 306(a.2) [of the Act] to their detriment by not pursuing other methods of a modification should not bear the entire burden of the provision being declared unconstitutional. Through the use of very careful and specific language, the General Assembly provided employers/insurers with credit for the weeks of compensation, whether total or partial in nature, previously paid. However, for the benefit of claimants, the General Assembly also specifically reduced the impairment rating necessary for a claimant's status to be changed from 49% or lower to 34% or lower, making it more difficult for employers to change total disability status to partial disability status. That the General Assembly used specific language to give retroactive effect to these carefully selected individual provisions does not make the entirety of Act 111 retroactive as the amendment lacks clear language to that effect.

*Rose Corp.*, 238 A.3d at 561-62 (citations and footnote omitted).

While it is true that Section 306(a.3) [of the Act] essentially reenacted the IRE provisions, importantly, Section 306(a.3) [of the Act] **did not take effect** until it was enacted on October 24, 2018. Therefore, until that time, [an e]mployer could not utilize an IRE to change [a c]laimant's disability status, even if the IRE otherwise complied with the later enacted requirements of Section 306(a.3)(1) [of the Act,] because no law permitted [an e]mployer to utilize an IRE process until Act 111 was enacted. There is no provision in Act 111 which specifically or implicitly provides for an IRE performed **prior** to Section 306(a.3) [of the Act]'s enactment to be validated afterward. Arguably, this would undermine the invalidation of IREs by the [Pennsylvania] Supreme Court in *Protz II*, whereas the approach set forth herein gives effect to the statutory language while upholding the legislative balance of claimants' and employers'/insurers' interests in light of *Protz II* and Act 111.

*Rose Corp.*, 238 A.3d at 563-64 (footnote omitted); *see also Janison v. City of Phila. (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 1335 C.D. 2021, filed June 29, 2022).

14

The *Pierson* Court also recognized that, "as [this Court] made clear in *Rose Corporation*, the 104-week and credit provisions of Act 111 were explicitly given retroactive effect by the clear language used by the General Assembly." *Pierson*, 252 A.3d at 1180; *see also Janison*; *Jaskulski*; *Hender-Moody v. Am. Heritage Fed. Credit Union (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 166 C.D. 2021, filed Feb. 15, 2022), slip op. at 7 ("Act 111's IRE mechanisms can only apply after an employee has received 104 weeks of total disability benefits, which clearly contemplates application to injuries predating Act 111.  77 P.S. § 511.3(1)." "Because our analysis in *Pierson* is directly applicable and controlling here, we reject [the c]laimant's constitutional challenge[] to Act 111."). Based on this Court's previous rulings that Act 111 is constitutional and applicable to injuries occurring prior to October 24, 2018, the Board properly upheld the WCJ's decision granting the Modification Petition effective as of the September 17, 2019 IRE date.

### Conclusion

Based on the foregoing, the Board did not err by upholding the WCJ determinations granting Claimant's Reinstatement Petition effective May 14, 2019, and granting the Modification Petition effective September 17, 2019.  Accordingly, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raymond George,                            :
                 Petitioner           :
                                  :
            v.                        :
                                  :
City of Philadelphia (Workers'      :
Compensation Appeal Board),       :     No. 23 C.D. 2022
                 Respondent      :

# O R D E R

AND NOW, this 11th day of October, 2022, the Workers' Compensation Appeal Board's December 15, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge